**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

SUSAN ANDERSON,

      Movant,

   v.

UNITED STATES OF AMERICA,

      Respondent.

CIVIL ACTION NO.: 2:20-cv-109

(Case No.: 2:17-cr-20)

## REPORT AND RECOMMENDATION

Movant Susan Anderson ("Anderson"), who is currently housed at the Federal

Correctional Institution in Aliceville, Alabama, filed a 28 U.S.C. § 2255 Motion to Vacate, Set

Aside, or Correct Sentence through counsel.  Doc. 1.  The Government filed a Response, and

Anderson filed a Reply.  Docs. 7, 11.  For the reasons which follow, I **RECOMMEND** the Court

**DENY** Anderson's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter

the appropriate judgment of dismissal, and **DENY** Anderson *in forma pauperis* status on appeal

and a Certificate of Appealability.

## BACKGROUND

Anderson was charged by indictment, along with eight co-defendants, with: conspiracy to

possess with intent to distribute and distribute 50 grams or more of methamphetamine, in

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (count 1); and distribution of

methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (counts 2 and 3).  United

States v. Anderson, 2:17-cr-20 (S.D. Ga.) ("Crim. Case"), Doc. 3.  Anderson faced a penalty of

at least 10 years up to life in prison on count 1 and at least 5 and up to 40 years' imprisonment on

both counts 2 and 3, if convicted.  Crim. Case, Doc.4.  Anderson's Court-appointed counsel, B. Reid Zeh, III, filed numerous pre-trial motions on Anderson's behalf.  Crim. Case, Docs. 165, 221–33.  Mr. Zeh informed the Court Anderson's motions had been resolved, and the Honorable Lisa Godbey Wood scheduled the matter for jury trial.  Crim. Case, Docs. 254, 257, 258.

Anderson and Mr. Zeh reached a plea agreement with the Government before trial was to commence, whereby Anderson agreed to plead guilty to count 1 of the indictment (the conspiracy count) and was informed she would be subject to a term of imprisonment of at least 10 years but less than life in prison.  Crim. Case, Doc. 269 at 4, 5.  In exchange, the Government agreed to move to dismiss the other two counts of the indictment, not object to a recommendation for appropriate reduction for acceptance of responsibility, and move to withdraw the 21 U.S.C. § 851 enhancement.  Id. at 7, 8.  Judge Wood conducted a change of plea, or Rule 11, hearing on January 11, 2018.  Crim. Case, Doc. 267.

Prior to sentencing, the Government filed a § 5K1.1 motion for downward departure on Anderson's behalf based on "her substantial assistance in the investigation and prosecution of others."  Crim. Case, Doc. 355 at 1.  Judge Wood adopted the probation officer's factual statements and conclusions about application of the Guidelines contained in the pre-sentence investigation report ("PSR"), as there were no objections from Anderson or the Government. Crim. Case, Doc. 390 at 4.  Judge Wood noted Anderson's offense level was 37 and her criminal history category was VI, leading to an advisory Guidelines' range of 360 months to life in prison. Id. at 4–5.  Judge Wood also noted the statutory penalty was a minimum of 10 years and a maximum of life in prison.  Id. at 5.  Mr. Zeh then asked Judge Wood to give the Government's downward departure motion "very, very strong consideration."  Id.  Mr. Zeh argued Anderson was addicted to methamphetamine, noted her lack of criminal history for 18 years was close to

having a significant impact on her criminal history category (i.e., if Anderson's criminal history was too old, she would have been in category III versus VI), observed her husband had been sentenced to 120 months' imprisonment, stated Anderson's age, revealed she suffers from hypertension, chronic obstructive pulmonary disease ("COPD"), emphysema, a heart murmur, degenerative disc disease, and osteoporosis, and asked Judge Wood to consider a term of 120 months in prison, which would have been a "very significant departure[.]" Id. at 5–8. Judge Wood stated she had read the PSR, considered the Government's § 5K1.1 motion, listened to what Mr. Zeh and the Government's attorney said at the sentencing hearing, and thought about the 18 U.S.C. § 3553 factors and sentenced Anderson to 280 months in prison in this case and in Case Number 2:18-cr-30, to be served concurrently with each other. Id. at 10–11.

Anderson has now filed a § 2255 Motion to challenge her sentence, and the Government filed a Response. Docs. 1, 7. Anderson filed a Reply. Doc. 11. This matter is fully briefed and ripe for the Court's review.

## DISCUSSION

Anderson asserts Mr. Zeh had his own legal troubles during the time he represented her, which she was unaware of, and these troubles created a conflict affecting Mr. Zeh's representation of Anderson. Doc. 1 at 5; Doc. 1-1 at 6. Anderson also alleges Mr. Zeh did not bring facts relating to her drug addiction and other health issues to the Court's attention during sentencing. Doc. 1 at 6; Doc. 1-1 at 6.

In response, the Government counters Anderson has not established Mr. Zeh labored under an actual conflict or that any actual conflict adversely affected Mr. Zeh's performance as counsel. Doc. 7 at 14. The Government notes Mr. Zeh specifically referenced Anderson's

addiction and health conditions, and the Court was aware of the contents of Anderson's PSR.  Id. at 17.

## I.      Whether Mr. Zeh Had a Conflict

"'The Sixth Amendment right to effective assistance of counsel encompasses the right to counsel untainted by conflicts of interest.'"  Clark v. United States, No. CR610-002, 2011 WL 2174425, at *3 (S.D. Ga. May 16, 2011), report and recommendation adopted, 2011 WL 2173704 (S.D. Ga. June 2, 2011) (quoting Lynd v. Terry, 470 F.3d 1308, 1318 (11th Cir. 2006)). "A defendant's right to effective assistance of counsel is violated when the defendant's attorney has an actual conflict of interest that impacts the defendant adversely."  United States v. Valois, 915 F.3d 717, 727 (11th Cir. 2019).  "To prove ineffective assistance based upon a conflict of interest, movant must show: '(a) that [her] defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected the attorney's performance.'"  Id. (quoting Reynolds v. Chapman, 253 F.3d 1337, 1342 (11th Cir. 2001)).  "'Only when a defendant shows that [her] counsel actively represented conflicting interests does [s]he establish an actual conflict under the Sixth Amendment.'"  Kennedy v. United States, 799 F. App'x 697, 700 (11th Cir. 2020), cert. denied, 141 S. Ct. 319 (quoting Quince v. Crosby, 360 F.3d 1259, 1264 (11th Cir. 2004)).

### A.      Actual Conflict

Anderson notes the American Civil Liberties Union ("ACLU") filed a lawsuit against Mr. Zeh based on his alleged role "in perpetuating Glynn County's wealth-based incarceration system and for failing to provide legal assistance to his clients who cannot afford a private attorney."[1]  Doc. 1-1 at 7.  In addition, Anderson states Mr. Zeh was indicted in Glynn County in

---

[1]      It is unclear whether Anderson references the federal lawsuit Mr. Zeh was a party to or a state court lawsuit.  Doc. 1-1 at 7; Doc. 11 at 1, 6.  Whichever reference Anderson intended to make is not determinative of her claims in this Motion.

November 2019 for sexual battery, assault and battery, false imprisonment, aggravated assault, robbery by force, theft by taking, sudden snatching, kidnapping, and witness intimidation.  Id. at 8.  Anderson contends Zeh was aware of these events during his representation of her, which "would have induced him to curry favor with the prosecutor's office."  Id. at 9.  Anderson alleges Mr. Zeh did not tell her he was experiencing legal problems and she knew nothing of these problems until after the appeal in this case was filed; she informed the Eleventh Circuit Court of Appeals of what little information she had.  Id. at 10.  According to Anderson, Mr. Zeh's criminal charges affected Mr. Zeh's judgment, "and his actions which aligned with the position of the government throughout his representation should have been a red flag to those in the legal community who knew or should have known that he was under investigation as the misdemeanor public defender in Glynn County and that he was being repeatedly arrested for domestic violence."  Id.  Anderson maintains, had Mr. Zeh informed her of his legal troubles, she would not have waived "this conflict and would have asked this Court to appoint a lawyer who was not experiencing legal problems involving the criminal abuse of women."  Id. at 11.

"An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'" Quince v. Crosby, 360 F.3d 1259, 1264 (11th Cir. 2004) (quoting Smith v. White, 815 F.2d 1401, 1405 (11th Cir. 1987)).  To prove an "'actual conflict' hindered [movant's] lawyer's performance, [a movant] 'must make a factual showing of inconsistent interests' or point to 'specific instances in the record' to suggest an actual impairment of his or her interests."  Id. (quoting Smith, 815 F.2d at 1404; Oliver v. Wainwright, 782 F.2d 1521, 1524–25 (11th Cir. 1986); and Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999)).

Anderson fails to show Mr. Zeh was laboring under an actual conflict during the time he represented her in criminal proceedings in this Court.  While Mr. Zeh was indicted in Glynn

County, the 18-count indictment relating to domestic violence charges on four separate incidents was not returned until November 8, 2019, based on charges arising from events occurring in November 21, 2018, at the earliest, which was after Anderson was sentenced in this Court on October 30, 2018.[2]  Doc. 1-2 at 1; Crim. Case, Doc. 378.  Mr. Zeh's indictment was also after he filed a notice of appeal on Anderson's behalf.  Crim. Case, Doc. 375.  In fact, Mr. Zeh's indictment came after the appeal opinion was rendered on October 17, 2019, and 10 days before the opinion was issued as a mandate on November 18, 2019.  Id. at Docs. 416, 417.

Mr. Zeh was a named defendant in a federal civil suit, brought in March 2018 by ACLU attorneys on behalf of individually named people and stemming from contentions relating to Mr. Zeh's former position with the Glynn County Public Defender's Office.  That case was pending during a portion of Mr. Zeh's representation of Anderson in this case.  Mock v. Glynn County, 2:18-cv-25 (S.D. Ga. Mar. 9, 2018).  In addition, Anderson notes Mr. Zeh filed a defamation suit against the ACLU regarding a blog post entitled "Glynn County, Georgia's Crooked Public Defender," and was permitted to proceed with his claim.  Doc. 1-1 at 8.  However, Anderson makes no showing Mr. Zeh had interests inconsistent with her own or these legal proceedings caused an actual impairment on her interests in the criminal proceedings against her.  Anderson does not show anything other than bare assertions that Mr. Zeh had an actual conflict and this actual conflict hindered his performance in this Court in any manner.

---

[2]      *The Brunswick News* article Anderson references sets forth the dates of the incidents leading to Mr. Zeh's indictment: November 21, 2018, July 18, 2019, August 16, 2019, and August 20, 2019. Doc. 1-2 at 1–2.  Another article Anderson attached reveals Mr. Zeh was arrested for simple battery in March 2018 after attacking a man who was having a drink with the victim of the actions for which Mr. Zeh was later indicted in November 2019 and for driving under the influence in June 2018 after Mr. Zeh ran into the victim's house with his vehicle.  Id. at 5.  There is nothing before the Court indicating Mr. Zeh was indicted or otherwise prosecuted for the March 2018 or June 2018 incidents.

Moreover, Anderson presents no facts or evidence even whispering a suggestion Mr. Zeh tried to curry favor with the Government in this case that would have in any way benefitted him. In addition, Anderson makes no showing Mr. Zeh's filing of an Anders brief on appeal was an actual conflict.[3]  Thus, Anderson fails to show a Sixth Amendment violation.

**B.     Adverse Impact**

Even assuming Anderson had shown an actual conflict, she must show this actual conflict adversely affected her.  This "fact-specific inquiry requires the defendant to make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of his interests.  A mere speculative, hypothetical, or possible conflict of interest is insufficient to establish an ineffective-assistance claim."  Id. (citation omitted).  "To prove adverse effect, the '[movant] must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense.'"  Id. (quoting Pegg v. United States, 253 F.3d 1274, 1278 (11th Cir. 2001)).

Anderson points to no plausible alternative strategy or tactic she would have pursued and does not show any plausible alternative would have been reasonable under the facts of her case.  As noted, Anderson, with Mr. Zeh's assistance, was able to reach a plea agreement with the Government in this case.  The Government agreed to move to dismiss Anderson's § 851 enhancement as part of this plea agreement and later moved for a downward departure in light of Anderson's "[v]ery [s]ignificant" assistance in other investigations and prosecutions.  Crim.

---

[3]     Anders v. California, 386 U.S. 738 (1967).  Briefs filed based on this case are based on the belief there are no non-frivolous grounds to appeal.  The Eleventh Circuit Court of Appeals agreed with Mr. Zeh's belief, though noted Anderson was free to pursue her claims of ineffective assistance in a § 2255 motion.  Crim. Case, Doc. 416.

Case, Doc. 355 at 3.  What is more, Anderson fails to show a link between an alleged actual conflict and any decision to decline to pursue an unidentified alternative strategy.  In short, Anderson does not show any alleged conflict adversely affected her in this case, nor does she provide anything more than speculation.  The Court should **DENY** this portion of Anderson's § 2255 Motion.

## II.     Whether Counsel Rendered Ineffective Assistance (Non-Conflict Related)

Anderson maintains Mr. Zeh provided ineffective assistance of counsel during the plea process and during sentencing proceedings.  Doc. 1-1 at 13.  Anderson maintains the Court "was not asked to consider [her] drug addiction coupled with her serious illnesses as a mitigating factor under 18 U.S.C. § 3553(a)(1)[,]" which requires the Court to "consider the nature and circumstances of the offense and the history and characteristics of the defendant."  Id.  Anderson also maintains there "was an absolute dearth of advocacy from Zeh regarding [her] characteristics, and her sentence was therefore a result of the ineffective assistance of counsel and ought to be vacated."  Id.  Anderson states Mr. Zeh's "failure to make any argument for lesser punishment in light of Anderson's addiction and age undermines confidence in the sentence imposed . . . ."  Id. at 15.

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985).  This right also extends to the right to sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).  To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) her counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) she suffered prejudice as a result of that deficient performance.

Strickland, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).

"It is petitioner's burden to 'establish that counsel performed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that she was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

9

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

After pleading guilty, a defendant can only attack her resulting conviction in "strictly limited" circumstances. Bousley v. United States, 523 U.S. 614, 621 (1998). A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional defendant could not raise double jeopardy claim on collateral attack following guilty plea). Pertinently, a "knowing and voluntary guilty plea waives all non-

jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992). As discussed below, Anderson's contentions Mr. Zeh was ineffective are precluded by Anderson's knowing and voluntary plea agreement.[4]

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and her plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if [s]he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters [her] guilty plea free from coercion,
(2) understands the nature of the charges, and (3) understands the consequences of [her] plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. Cannon v. Jones,

---

[4]     Despite this determination, the Court addresses the relative merits of Anderson's ineffective assistance claims for the purpose of completeness.

Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing McMann v. Richardson, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant must live with what she has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

### A.     Assistance During Plea Process

Anderson and Mr. Zeh were able to negotiate a plea agreement with the Government whereby Anderson agreed to plead guilty to count 1 of the indictment: conspiracy to possess with intent to distribute 50 grams or more of methamphetamine. Crim. Case, Doc. 269 at 1. In exchange, the Government agreed to: not object to a recommendation Anderson receive a three-level reduction for acceptance of responsibility; determine whether Anderson's cooperation qualified as substantial assistance to warrant the filing of a motion for downward departure or reduction in sentence; move the Court to dismiss the remaining counts against Anderson; and withdraw the § 851 enhancement against Anderson. Id. at 2. The plea agreement set forth the statutory elements and factual basis of the offense to which Anderson was pleading guilty. Id. at 4–5. Anderson agreed she was guilty of the offense. Id. at 4. Additionally, Anderson agreed no one had promised her a particular sentence or range, and the Court could impose a sentence up to

12

the statutory maximum sentence of not less than 10 years' imprisonment and not more than life imprisonment but would look to the Sentencing Guidelines and sentencing factors of § 3553(a). Id. at 1, 5–6.  Further, Anderson affirmed she had read and reviewed the agreement with Mr. Zeh, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate.  Id. at 14.

Anderson appeared before Judge Wood for her Rule 11 proceeding.  Judge Wood addressed Anderson and informed her the purpose of the hearing was to ensure she understood the case pending against her, she understood all of the rights she was waiving or giving up by pleading guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. Zeh, pleading guilty was what Anderson wanted to do.  Crim. Case, Doc. 399 at 2–3.  Judge Wood inquired whether anyone had made, pushed, or leaned on Anderson to offer to plead guilty, and she said no one had done so and pleading guilty was what she wanted to do.  Id. at 3.

After Anderson was sworn in, Judge Wood told Anderson she did not have to plead guilty.  Id. at 6.  Judge Wood also told Anderson, if she chose to persist in her not guilty plea, she would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout the trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on her behalf; and testify herself or remain silent.  Id. at 6–7.  However, Judge Wood cautioned Anderson she would be waiving these rights if she pleaded guilty and Judge Wood accepted that guilty plea.  Id. at 7.  Anderson stated she understood and had no questions about the waiver of her rights.  Id.  When Judge Wood asked Anderson how far she had gone in school, Anderson informed her she graduated high school and had held jobs managing finance companies and sewing upholstery at Gulfstream.  Id. at 4.  Judge Wood inquired whether Mr. Zeh and Anderson had gone through the

documents involved in the case, including the indictment and plea agreement, and Anderson said she and Mr. Zeh had gone over the facts and law of his case, the indictment, and the plea agreement together.  Id. at 8.  Anderson stated Mr. Zeh had spoken with her in general terms about the advisory Sentencing Guidelines, she had no questions about the Guidelines, and she affirmed she was satisfied with Mr. Zeh's representation and had no complaints whatsoever.  Id.

Judge Wood reviewed the indictment with Anderson, the essential elements of the crime to which she was pleading guilty and the other counts of the indictment naming her, and what the Government would have to prove on essential elements.  Id. at 8–10.  Judge Wood advised Anderson to convict her of count 1 of the indictment, the Government would have to prove beyond a reasonable doubt the three essential elements: (1) two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess 50 grams or more of methamphetamine, a Schedule II controlled substance; (2) Anderson knew of the unlawful purpose of this plan and willfully joined it; and (3) the object of the unlawful plan was to possess with the intent to distribute and to distribute methamphetamine.  Id. at 10.  By pleading guilty, Judge Wood noted Anderson was admitting the essential elements of the crime to which she intended to plead guilty were satisfied.  Id.  Judge Wood advised Anderson of the maximum sentence she could impose, which was not less than 10 years or more than life in prison.  Id.  Moreover, Judge Wood explained to Anderson, in imposing a sentence upon her, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.  Id. at 12.  Judge Wood also stated she would consider some "major factors," including Anderson's criminal history, her role in the offense, and whether she told the truth and accepted responsibility.  Id.  Anderson stated she understood and had no questions.  Id.  Judge Wood inquired whether anyone had promised Anderson an exact sentence, and Anderson stated

no one had, to which Judge Wood responded that was good because all anyone could provide Anderson was his "best guess," which was not binding upon her.  Id. at 13.  Anderson verified Mr. Zeh had her permission to negotiate with the United States to reach a plea agreement.  Id. at 13.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Carlton Bourne stated the material provisions were:

> The Government will not object to a recommendation from [U.S.] Probation that the defendant receive an appropriate reduction in offense level for acceptance of responsibility.  The Government will withdraw the 21 U.S.C. [§] 851 enhancement.  The defendant agrees to pay restitution for any loss caused by her criminal conduct.  The defendant agrees to provide full, complete, candid[,] and truthful cooperation to the Government.  The Government in its sole discretion will decide whether this cooperation qualifies as substantial assistance that warrants the filing for a downward departure or reduction of sentence motion.
>
> At sentencing, the Government will move to dismiss any other counts of the indictment that remain pending against the defendant.  The defendant waives her right to appeal on any ground with three exceptions.  The defendant waives her right to collaterally attack her conviction and sentence on any ground and by any method including a [§] 2255 motion with only one exception.

Id. at 13–14.  Judge Wood asked Anderson if AUSA Bourne's summarization of the plea agreement was consistent with the plea agreement she signed, and she stated it was.  Id. at 15.  Anderson also stated she read the plea agreement before she signed it and affirmed no one had made her any promises regarding the outcome of her case, other than the provisions contained in the plea agreement.  Id.  Judge Wood also discussed the appeal waivers contained in the plea agreement, including the limited exceptions if: she were to sentence Anderson above the statutory maximum; she were to sentence Anderson above the advisory Guidelines range, as found by her; and the Government were to file a direct appeal.  Id. at 15–16.  Judge Wood also noted the plea agreement contained a collateral rights waiver, which stated Anderson entirely waives her "right to collaterally attack her conviction and sentence on any ground and by any

method[,] including but not limited to a 28 [U.S.C. §] 2255 motion.  Now, there is one exception to that waiver, and that is . . . you do retain the right to collaterally attack based on a claim of ineffective assistance of counsel."  Id. at 16.

Judge Wood then asked Anderson whether she wished to still plead guilty to count 1 of the indictment because she was in fact guilty of that count, and she answered in the affirmative. Id. at 17.  Judge Wood also asked Anderson whether she understood the rights and privileges she was waiving if she accepted her plea, and Anderson said she did.  Id.  Judge Wood determined Anderson's offer to plead guilty was made "knowing[ly]" and "voluntar[ily]."  Id. at 18. Anderson agreed.  Id.

The Government provided a factual basis for Anderson's plea of guilty by calling Bobby Banks, a special agent with the Georgia Bureau of Investigation, to testify.  Id.  Agent Banks testified he and agents with Alcohol, Tobacco, Firearms, and Explosives and other agencies had an investigation spanning several years' time involving Anderson and others, which was focused on Brantley County and surrounding areas and the distribution of methamphetamine.  Id. at 19. Agent Banks also testified he and other agents conducted controlled buys of methamphetamine, some of which were from Anderson, and conducted interviews.  Agent Banks noted agents seized "pounds" of methamphetamine from Anderson, the conspiracy involved more than 50 grams of methamphetamine, and the conspiracy stretched from November 2015 to March 2017. Id.  Agent Banks stated he had had a chance to interview Anderson, and she had been "forthright" with him.  Id. at 20.  When Judge Wood asked if there were an estimate of the number of pounds involved, Agent Banks responded there were about 20 pounds in the evidence room and "additional weight that we could theorize [Anderson] moved between Atlanta and south Georgia."  Id.  Anderson admitted to the truth of Agent Banks' testimony.  Id.  Judge

Wood was "satisfied" there was a factual basis for a plea, accepted Anderson's plea, and adjudged her guilty of count 1 of the indictment. Id. at 21. Judge Wood advised Anderson a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Zeh. Id.

To be clear, Judge Wood informed Anderson at the outset of the initial Rule 11 hearing the purpose of the hearing was for her to understand the case pending against her, the rights she was waiving by pleading guilty, the factual basis for her plea, and whether pleading guilty was what Anderson wanted to do after consultation with her attorney. Id. at 2–3. After telling Anderson she would be asked to swear under penalty of perjury to tell the truth at her Rule 11 hearing or the Government could prosecute her for perjury, Anderson averred no one was forcing her to plead guilty and pleading guilty was what she wanted to do. Id. at 3. Judge Wood discussed the specific rights Anderson was afforded if she chose to persist with a not guilty plea, and Judge Wood advised Anderson she would waive those rights if she pleaded guilty and Judge Wood accepted her plea. Id. at 6–7. Anderson stated she had spoken with Mr. Zeh about the facts and law of her case, including the plea agreement, superseding indictment, and the sentencing Guidelines in general terms. Id. at 8. Anderson verified AUSA Bourne's summary of the plea agreement was consistent with the plea she had signed. Id. at 14. Judge Wood asked Anderson whether she wanted to plead guilty because she was, in fact, guilty of count 1 of the indictment, and she answered in the affirmative. Anderson declared she understood the rights and privileges she was waiving by pleading guilty and proceeded to do so. Judge Wood determined Anderson's guilty plea was knowing and voluntary. Id. at 18. Agent Banks then provided a factual basis for Anderson's plea, and Anderson agreed with the Government's factual basis. Id. at 20. Judge Wood accepted Anderson's plea and adjudged her guilty of count

1 of the indictment.  Id. at 21.  In so doing, Judge Wood addressed the "three core principles"
required during a Rule 11 hearing.  Lambert, 777 F. App'x at 339.

Anderson's assertion Mr. Zeh was ineffective during the plea phase is belied by the
record before the Court and is without merit.  Anderson stated during the plea hearing she and
Mr. Zeh had discussed the law and facts of this case and the Sentencing Guidelines, at least in
general terms, and had no questions.  The record before the Court, including the statements
Anderson rendered under oath and under penalty of perjury, belies Anderson's contentions in her
Motion as to Mr. Zeh's assistance during the plea process.  In addition, Anderson makes nothing
more than conclusory statements in this regard.  Thus, Anderson has not satisfied both Strickland
prongs.  For these same reasons, to the extent Anderson argues Mr. Zeh's alleged ineffective
assistance rendered her plea unknowing and involuntary, Anderson's assertions fail.  As
discussed, Judge Wood specifically found Anderson's plea was knowing and voluntary, and
Anderson offers nothing to refute this finding.  Anderson is not entitled to her requested relief,
and the Court should **DENY** this portion of her Motion.

### B.    Assistance During Sentencing

Anderson also maintains Mr. Zeh rendered ineffective assistance during her sentencing
proceedings because he failed to present argument about her drug addiction and other medical
conditions.  This contention clearly is contradicted by the record and is without merit.

During the Rule 11 hearing, Judge Wood asked Anderson how old she was and also
observed Anderson is on medications for her diagnosed heart murmur and nerve damage to her
hand.  Crim. Case, Doc. 399 at 4, 17.  The probation officer noted in the PSR Anderson's age
and her report she suffers from hypertension, COPD, emphysema, degenerative disc disease, a
heart murmur, and nerve damage in her hand.  The probation officer was able to verify Anderson

was prescribed medications for nerve pain, acid reflux, nausea, depression, and anxiety.  PSR,

¶¶ 49, 50.  In addition, the probation officer noted Anderson reported her drug use and she last

used marijuana in 2015 and methamphetamine on September 4, 2017, the date of her arrest.  Id.

at ¶¶ 51, 59.  The Government moved for a downward departure from the advisory Guidelines'

range based on Anderson's assistance.  Crim. Case, Doc. 355.

During the sentencing hearing before Judge Wood, Mr. Zeh urged the Court to give the

Government's downward departure motion "very, very strong consideration."  Crim. Case,

Doc. 390 at 5.  Mr. Zeh also contrasted Anderson's acceptance of responsibility with her

husband's (and co-defendant's) desire to contest a lot of what was in his PSR, yet he was

sentenced to 120 months' imprisonment.  Id. at 6, 7.  In addition, Mr. Zeh stated Anderson was

addicted to methamphetamine but had stayed out of trouble from the time she was sentenced in

1997 until 2015, which was the start of the conspiracy.  Id. at 6.  Mr. Zeh argued Anderson

should not have been categorized as a career offender and opined her Guidelines' range should

have been 262 to 327 months in prison rather than the 360 months-to-life range she faced.  Id. at

7.  Mr. Zeh pointed out Anderson was 67 and would be 68 at the time of sentencing.  Id.  Mr.

Zeh also pointed out Anderson was "not in the best of health[,]" as she suffers from

hypertension, COPD, and emphysema and has a heart murmur, nerve damage in her hand,

degenerative disc disease, and osteoporosis.  Id. at 8.  Mr. Zeh told Anderson he would ask Judge

Wood to consider sentencing Anderson to the same amount of time her husband received, 120

months, though he understood that was a significant departure.  Id.  Mr. Zeh reported Anderson

had stated she was done with leading a life of criminal activity.  Id. at 9.  After hearing briefly

from the Government and granting its § 5K1.1 motion, Judge Wood gave Anderson the

opportunity to make a statement.  Anderson apologized to her husband and the community.  Id. at 10.

Judge Wood stated she read the PSR, considered the Government's § 5K1.1 motion, listened to what Mr. Zeh, the AUSA, and Anderson had to say, and considered the § 3553 factors, as they apply "uniquely" to Anderson.  Id.  Judge Wood noted Anderson the "undisputed 'queen-pin'" of the conspiracy and explained others who were indicted with Anderson received lesser punishments than what Anderson faced because they "had significantly less involvement and less criminal history" than Anderson.  Id. at 11.  Judge Wood also explained to Anderson: "[You have] amassed a fairly stunning criminal history, and the conduct that you were engaged in culminating with you being holed up in a hotel room somewhere in Florida with all kinds of things you shouldn't have had has earned you a sentence that is substantially more than the codefendants received."  Id.  Judge Wood further observed, on the good side of the ledger, Anderson cooperated with law enforcement officials and did so "very significantly[.]"  Id.  After taking all of these things into consideration, Judge Wood sentenced Anderson to 280 months in prison in this case, to be served concurrently with her 280-month sentence in Case Number 2:18-cr-30.  Id.  Judge Wood noted she departed downward from the advisory Guidelines' range.

Mr. Zeh highlighted Anderson's assistance to law enforcement, as well as her age, medical conditions, and drug addiction, and asked the Court to sentence Anderson to 120 months in prison, significantly below the advisory Guidelines' range.  Mr. Zeh simply was not successful in achieving more than the 80-month departure Judge Wood made.  Anderson's assertions that Mr. Zeh did not present argument regarding her age and health and, thus, rendered ineffective assistance during sentencing are not only belied by the record, they also are disingenuous.  The Court should **DENY** this portion of Anderson's § 2255 Motion.

III.    **Leave to Appeal *in Forma Pauperis* and Certificate of Appealability**

The Court should also deny Anderson leave to appeal *in forma pauperis*.  Though Anderson has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas

petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Id.</u> "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Franklin v. Hightower</u>, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Miller-El</u>, 537 U.S. at 336.

Based on the above analysis of Anderson's Motion and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Anderson a Certificate of Appealability, Anderson is advised she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Anderson's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of

dismissal, and **DENY** Anderson *in forma pauperis* status on appeal and a Certificate of Appealability.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 18th day of July, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA